**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JOHN KANGETHE,<br>        Plaintiff<br><br>        v.<br><br>THE DISTRICT OF COLUMBIA,<br>        Defendant | Civil Action No. 15-2185 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(September 13, 2016)

This is an age discrimination and retaliation case brought by an employee of the District of Columbia Department of Employment Services ("DOES").[1]  Plaintiff John Kangethe alleges that he was passed over for two promotions on the basis of his age and as retaliation for earlier discrimination complaints.  Specifically, Plaintiff alleges that he was not selected to fill an Associate Director ("AD") position with the Office of Labor Market Research and Information ("LMI") on a temporary basis when it became vacant in February 2014 ("Temporary LMI AD Position"), and subsequently was not chosen to fill that same position on a permanent basis later that year ("Permanent LMI AD Position").  He also alleges various other retaliatory actions, such as being denied leave to attend the deposition of a party to a prior lawsuit of his and being issued a notice of proposed suspension.  Plaintiff brings this lawsuit against the District of Columbia under the Age Discrimination in Employment Act ("ADEA"), the District of Columbia Human Rights Act ("DCHRA") and Title VII of the Civil Rights Act ("Title VII").

---

[1] The Court's consideration has focused on the following documents:
- Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 5;
- Pl.'s Opp'n to Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 6; and
- Def.'s Reply to Pl.'s Opp'n to Mot. to Dismiss ("Def.'s Reply"), ECF No. 9.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision.  *See* LCvR 7(f).

Before the Court is Defendant District of Columbia's [5] Motion to Dismiss.  Defendant argues that Plaintiff fails to state a claim for age discrimination or retaliation for three main reasons.  First, Defendant argues that none of the allegedly discriminatory or retaliatory actions described in Plaintiff's Complaint are actionable "adverse actions."  Second, Defendant argues that Plaintiff failed to exhaust his administrative remedies with regard to certain incidents that are described in Plaintiff's Complaint but were not mentioned in Plaintiff's administrative charge.  Third, Defendant argues that Plaintiff's retaliation claim fails because the causal connection between protected activity and the alleged retaliation is too remote.

Upon consideration of the pleadings, the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion.  The Court agrees that a number of the allegedly retaliatory actions in Plaintiff's Complaint do not constitute "adverse actions" upon which a claim for age discrimination or retaliation may be based.  Specifically, Plaintiff has not pled adverse actions with respect to Ms. Reich's March 11, 2014 email, the notice of proposed suspension issued to Plaintiff, or the denial of the Temporary LMI AD Position.  Accordingly, Defendant's Motion is GRANTED and Plaintiff's claims are DISMISSED to the extent that they are premised on these alleged actions. Defendant's Motion is DENIED in all other respects.  The Court finds that Plaintiff has pled actionable adverse actions with respect to the denial of the Permanent LMI AD Position and the denial of Plaintiff's requested leave to attend the deposition of a party to his prior discrimination lawsuit against DOES.  The Court also finds that Plaintiff sufficiently pled causation, and rejects Defendant's argument that Plaintiff failed to exhaust his administrative remedies.

# I. BACKGROUND

For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). Further, because Plaintiff proceeds in this matter *pro se*, the Court must consider not only the facts alleged in Plaintiff's Complaint, but also the facts alleged in Plaintiff's Opposition to Defendant's Motion to Dismiss. *See Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss") (quoting *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999)); *Fillmore v. AT & T Mobility Servs. LLC*, 140 F. Supp. 3d 1, 2 (D.D.C. 2015) ("the Court, as it must in a case brought by a *pro se* plaintiff, considers the facts as alleged in both the Complaint and Plaintiff's Opposition to Defendant's Motion to Dismiss."). The Court recites only the background necessary for the Court's resolution of the pending Motion to Dismiss.

Plaintiff John N. Kangethe was hired in 2002 as a Labor Economist for DOES and has been employed there ever since. Compl., ECF No. 1, ¶ 12. Plaintiff applied for a "Supervisory Labor Economist" position at LMI multiple times in 2008 and 2009 but was never interviewed for the position. *Id*. ¶ 19. He did, however, serve in the position on an acting basis for over eighteen months. *Id*. ¶ 53.

In 2010, Plaintiff filed a complaint with the Washington, D.C. Office of Human Rights ("OHR"), alleging discrimination and retaliation on the basis of race, national origin, and age. *Id*. ¶ 20. After obtaining a "Rights to Suit" letter from the Equal Employment Opportunity

Commission ("EEOC"), Plaintiff filed a lawsuit against his employer in the United States
District Court. *Id.*

The Supervisory Labor Economist position was subsequently renamed "Associate
Director of Labor Market, Workforce, Research and Analysis" ("LMI AD Position"). *Id.* ¶ 21.
Openings for that position were advertised again multiple times in 2011 and 2012. *Id.* Again,
Plaintiff applied each time but was never interviewed, despite being qualified for the position.
*Id.* ¶ 22.

The LMI AD Position became available again in February 2014 when the individual in
that position was terminated. *Id.* ¶¶ 25-26. At that time, Defendant selected Mr. Andrew
Rodgers to fill the LMI AD Position on an "interim" basis while a search for a permanent
replacement was conducted. *Id.* ¶ 29. Mr. Rodgers was "in his 40's." *Id.* Plaintiff complained
to several individuals at DOES regarding this designation, arguing that Mr. Rodgers and others
who had held the Temporary LMI AD Position in the past had discriminated against him. *Id.* ¶¶
31-33. For example, Plaintiff complained about an incident where Mr. Rodgers had upheld a 15-
day suspension for Plaintiff without pay. *Id.* ¶ 31. The suspension was later struck from
Plaintiff's personnel file. *Id.* ¶ 32.

DOES told Plaintiff that Mr. Rodgers had been selected for the Temporary LMI AD
Position because he would "advance the business interest of the agency" and because he "had
worked closely with LMI before." *Id.* ¶ 34. Plaintiff alleges that these rationales were
pretextual, and that Mr. Rodgers was actually chosen over Plaintiff for discriminatory reasons.
*Id.* ¶¶ 35-40.

The Permanent LMI AD Position was then advertised on May 14, 2014. *Id.* ¶ 41.
Plaintiff submitted a timely application. *Id.* DOES allowed the position to remain unfilled for a

period of months.  *Id*. ¶¶ 45-51.  Eventually, DOES cancelled the opening without filling the Permanent LMI AD Position.  *Id*.

However, DOES then issued a second posting for the Permanent LMI AD Position in August 2014.  *Id*. ¶ 50.  Plaintiff did not submit another application at this time.  Pl.'s Opp'n at 5.  Mr. Saikou Diallo was chosen for the position on September 11, 2014.  Compl. ¶ 51.  Mr. Diallo, who had been hired as a Labor Economist at DOES in May 2014, is 38 years old.  *Id*. ¶ 43.  He did not apply for the Permanent LMI AD Position when it was advertised in May 2014.  *Id*. ¶ 44.  Plaintiff alleges that Mr. Diallo has admitted that he also did not apply for the position when it was advertised in August 2014.  Pl.'s Opp'n at 13, n.4.

Plaintiff alleges that Mr. Diallo was less qualified than himself for the Permanent LMI AD Position.  Compl. ¶¶ 52-53.  He further alleges that DOES "refused to give any consideration to Plaintiff," even though they knew he had applied for the position repeatedly, including applying for the current vacancy earlier that year.  *Id*. ¶ 54.  Plaintiff alleges that Mr. Diallo was chosen as a result of age discrimination.  *Id*. ¶ 61.

Plaintiff also alleges that the individuals who discriminated against him with regard to the Temporary and the Permanent LMI AD Positions were aware of the discrimination claims he had filed in 2010 with the OHR and EEOC, the ongoing lawsuit he was pursuing that grew out of those claims, and his other "continued complaints" of discrimination.  *Id*. ¶¶ 70, 77.  He alleges that he was not selected for either LMI AD Position as retaliation for this protected activity.  *Id*. ¶ 77.  When Plaintiff first complained to his superior, Ms. Stephanie Reich, regarding the selection of Mr. Rodgers for the Temporary LMI AD Position, Ms. Reich's response included a reference to Plaintiff's lawsuit, indicating to Plaintiff that his "on-going lawsuit . . . played a role in the Plaintiff's denial of the interim LMI supervisory position."  *Id*. ¶ 76.  Specifically, in a March 11,

2014 email, Ms. Reich wrote "[p]lease note, we remain aware of your lawsuit and the case, as decided on the merits, will be honored by the DC government and ['DOES'].  However, as that matter is pending we must continue to produce work product."  *Id*. ¶ 74.

Plaintiff also alleges that Defendant retaliated against him by denying him leave to attend the deposition of a party to Plaintiff's prior discrimination lawsuit against DOES, Mr. James Moore.  *Id*. ¶ 78.  Finally, Plaintiff also alleges that Defendant retaliated against him when he was issued an "Advanced Written Notice of Proposed Suspension of 15 days," based on "manufactured charges."  *Id*. ¶¶ 82-83.  Plaintiff did not, however, serve this suspension.  Pl.'s Opp'n at 21.

Based on these allegations, Plaintiff asserts causes of action for age discrimination and retaliation under the ADEA, Title VII and the DCHRA.  *Id*. ¶ 90.  Defendant moves to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

The various arguments in Defendant's Motion can be organized into three main categories: Defendant argues that Plaintiff's age discrimination and retaliation claims must be dismissed because Plaintiff (1) fails to demonstrate any actionable adverse actions, (2) failed to exhaust his administrative remedies, and (3) fails to demonstrate a causal link between protected activity and allegedly retaliatory actions. As explained below, the Court agrees that some of the incidents alleged in Plaintiff's Complaint are not "adverse actions," but rejects the remainder of Defendant's arguments.

### 1. Adverse Actions

The Court begins by resolving the parties' numerous disputes regarding whether various allegations in Plaintiff's Complaint constitute "adverse actions." An adverse action is "'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). An employee must "experience[ ] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002); *see also Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (distinguishing between "purely subjective injuries" which are not actionable, and "objectively tangible harm," which is actionable). Further, "[a] tangible employment action in most cases inflicts direct economic harm." *Burlington Indus.,* 524 U.S. at 762. Therefore, "not everything that makes an employee unhappy is an actionable adverse action." *Russell v. Principi*, 257 F.3d 815, 818 (D.C. Cir. 2001).

For the purposes of Plaintiff's retaliation claims in particular, an employment action must be "materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotation marks omitted)).

Defendant argues that the following incidents do not constitute "adverse actions": (A) Ms. Reich's March 11, 2014 email, (B) the written notice of proposed suspension issued to Plaintiff, (C) the failure to grant Plaintiff leave to attend Mr. Moore's deposition, (D) the failure to select Plaintiff for the Temporary LMI AD Position, and (E) the failure to select Plaintiff for the Permanent LMI AD Position.

### A.  Ms. Reich's March 11, 2014 Email

As a preliminary matter, Defendant argues in his Motion that "Plaintiff alleges an email written on March 11, 2014[ ] is an example of retaliation." Def.'s Mot. at 13.  Defendant contends that the email cannot constitute an adverse action because it was merely "explanatory in nature and does not display any negative or retaliatory act toward Plaintiff." *Id*.  In his Opposition, Plaintiff concedes that Ms. Reich's email was not an "adverse action." Pl.'s Opp'n at 19.  Plaintiff states that the email merely "provides material information" regarding Plaintiff's other retaliation claims. *Id*.  The Court agrees with this characterization.  Accordingly, Defendant's Motion is GRANTED in so far as Ms. Reich's email does not constitute an "adverse action" for the purposes of either of Plaintiff's causes of action.  This does not, of course, prevent Plaintiff from using the email as evidence to support his claims.

### B.  The Notice of Proposed Suspension

Defendant next argues that Plaintiff's allegation that "the Associate Director 'issued

Plaintiff an Advanced Written Notice of Proposed Suspension of 15 days'" cannot constitute an adverse action because the suspension was not carried out.  Def.'s Mot. at 12.  Defendant argues that, "[i]n this jurisdiction, 'courts have been unwilling to find adverse actions where the suspension is not actually served.'"  *Id.* (*quoting Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008)).

Plaintiff concedes that the proposed suspension was not actually served, but argues that the notice nonetheless constitutes an adverse action because the charges in the notice of suspension were "manufactured" and the proposed suspension was issued in a "callous manner." Pl.'s Opp'n at 21.  "Taken into context," Plaintiff argues," the "proposed suspension, though not carried out, constitutes an adverse employment action."  *Id.*

The Court agrees with Defendant that the un-served suspension was not an "adverse action."  Plaintiffs who do not actually serve proposed punishments do not suffer the sort of objective, material harm that is required to constitute an "adverse action" in this Circuit.  *See Baloch*, 550 F.3d at 1199 ("courts have been unwilling to find adverse actions where the suspension is not actually served."); *Mahoney v. Donovan*, 824 F. Supp. 2d 49, 61 (D.D.C. 2011), *aff'd in part,* No. 12-5016, 2012 WL 3243983 (D.C. Cir. Aug. 7, 2012), *and aff'd in part,* 721 F.3d 633 (D.C. Cir. 2013) ("Our Circuit has held that a proposed disciplinary action does not constitute a materially adverse employment action.").

It is undisputed that Plaintiff never served the proposed suspension.  Pl.'s Opp'n at 21. Nor does Plaintiff demonstrate, in his Complaint or in his Opposition, any material or tangible harm he suffered as a result of the proposed but un-served suspension.  Plaintiff argues only that the charges against him were "manufactured" and "bogus," and that the suspension was proposed in a "callous manner."  *Id.*  Even accepting these allegations as true, however, they do not negate

the fact that Plaintiff did not serve the proposed suspension, and thus suffered no material or tangible harm as a result of it.  Accordingly, Defendant's Motion is also GRANTED in so far as the notice of proposed suspension does not constitute an "adverse action" for the purposes of either of Plaintiff's causes of action.

### C.  Non-Selection for Temporary LMI AD Position

The parties also dispute whether Defendant's failure to select Plaintiff for the Temporary LMI AD Position in February 2014 constitutes an adverse action.  Defendant claims that "[t]he 'denial of . . . a temporary designation is not an adverse employment action' contemplated by employment discrimination statutes."  Def.'s Mot. at 6 (quoting *Stewart v. Evans*, 275 F.3d 1126, 1135 (D.C. Cir. 2002)).  Plaintiff responds that, under certain circumstances, like those present here, denial of temporary positions can constitute adverse actions.  Pl.'s Opp'n at 9-10.

Although the Court does not agree with Defendant's suggestion that any *per se* rule exists such that denial of a temporary position can never be an adverse action, the Court finds that the denial of the Temporary LMI AD Position, on the specific facts of this case, is not sufficient.[2]  As a general matter, failure to appoint an individual to a temporary position is usually not sufficient to constitute an adverse action.  *See Stewart*, 275 F.3d at 1135 (stating that "the D.C. Circuit has

---

[2] Defendant also argues that Plaintiff cannot state a claim with regard to his non-selection for the Temporary LMI AD Position because the individual who DOES did select for that position was himself over the age of 40, and therefore also within the class of individuals protected by the ADEA.  Def.'s Mot. at 7-8.  Because the Court finds that denial of the Temporary LMI AD Position was not an adverse action, this issue is not dispositive of Defendant's Motion.  Nonetheless, the Court notes that the Supreme Court has held that "[t]he fact that one person in the protected class has lost out to another person in the protected class is [ ] irrelevant, so long as he has lost out *because of his age.*"  *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996); *Stith v. Chadbourne & Parke, LLP.*, 160 F. Supp. 2d 1, 13 (D.D.C. 2001) ("the fact that one's replacement is not in the same protected class as the discharged employee 'may help raise an inference of discrimination, but it is neither a sufficient or a necessary condition.'") (quoting *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996)).

held that this type of temporary designation [Acting Deputy Assistant Secretary for Administration] is not one of the terms, conditions, or privileges of employment contemplated by Title VII"); *Brookens v. Solis*, 616 F. Supp. 2d 81, 91 (D.D.C. 2009), *aff'd,* No. 09-5249, 2009 WL 5125192 (D.C. Cir. Dec. 9, 2009) (holding that "plaintiff's claims as to the denial of desk audits and details do not constitute adverse employment actions").  However, there are exceptions.  Non-selection for a temporary position can constitute an adverse action if the position would have provided some tangible and objective benefit.  *See, e.g.*, *White v. Vilsack*, 888 F. Supp. 2d 93, 98 (D.D.C. 2012) (holding that plaintiff alleged an adverse action based on denial of a temporary position because the position "could possibly have affected Plaintiff's potential pay").  However, generalized and speculative assertions of benefits that may accrue from a temporary post are insufficient.  *See Maramark v. Spellings*, No. 06-5099, 2007 WL 2935411, at *1 (D.C. Cir. Sept. 20, 2007) ("the denial of a five-month detail that might have allowed [plaintiff] to secure a permanent position at DOE, is too speculative to constitute an 'objectively tangible harm.'") (quoting *Stewart,* 275 F.3d at 1135).

In this case, Plaintiff has not sufficiently pled that failure to appoint him to the Temporary LMI AD Position was an adverse action.  Plaintiff argues that he was denied an opportunity to carry "greater supervisory responsibilities," "gain even more experience," "review the work of the employees under his tutelage," and have responsibility over a larger budget.  Pl.'s Opp'n at 10.  He also argues that the interim position "would clearly have opened other avenues of advancement."  *Id.*  These benefits are too intangible and speculative.  Plaintiff does not indicate any *concrete* benefit he missed out on, such as increased pay or benefits.  Nor, unlike the plaintiff in *Browne v. Donovan*, 12 F. Supp. 3d 145 (D.D.C. 2014), does Plaintiff plausibly plead that the position would have given Plaintiff an increased likelihood of securing a permanent promotion.

*Id*. at 155 (noting that in that case "the record contain[ed] evidence that not only Plaintiff, but other employees in OGC viewed the detail as an opportunity to improve the chances of being selected for the Associate General Counsel position permanently").  To the contrary, Plaintiff in this case alleges that he had repeatedly been overlooked for the Permanent LMI AD Position despite having held the Temporary LMI AD Position in the past.  Compl. ¶¶ 19-22, 53.  Although not dispositive, it also bears noting that Mr. Rodgers, who was selected for the Temporary LMI AD Position in February 2014, was also not ultimately chosen for the Permanent LMI AD Position later that year.  *Id*. ¶ 51.  Under these circumstances, the Court finds that Plaintiff failed to plead an adverse action with regard to the denial of the Temporary LMI AD Position for the purposes of either of his causes of action, and GRANTS Defendant's Motion in this respect.[3]

### D.  The Denial of Leave to Attend Deposition

On the other hand, the Court finds that Plaintiff has pled an adverse action with regard to Defendant's refusal to grant him leave to attend the deposition of a party to his prior discrimination lawsuit against DOES.  Defendant argues that its "refusal to approve leave for Plaintiff to attend the 'scheduled deposition' of another employee" does not constitute an "adverse action" because "[f]ailing to approve leave is . . . not within the contemplation of Title VII adverse actions sufficient to state a claim for retaliation."  Def.'s Mot. at 13.  Defendant relies on *Newton v. Office of the Architect of the Capitol*, 905 F. Supp. 2d 88, 93 (D.D.C. 2012),

---

[3] In his Opposition, Plaintiff also argues that denial of the opportunity to compete for the Temporary LMI AD Position constitutes an adverse action.  However, because the Court determines that failure to obtain this interim post was itself insufficient to constitute an adverse action, it follows that denial of the opportunity to compete for the same is also not an adverse action.  *Cf. Stewart*, 275 F.3d at 1135 (plaintiff could not establish retaliation where individuals allegedly "interfered with and delayed her appointment" to temporary position because "[e]ven if [they] had succeeded in denying [plaintiff] this designation, the D.C. Circuit has held that this type of temporary designation is not one of the terms, conditions, or privileges of employment contemplated by Title VII.").

*aff'd,* 598 F. App'x 12 (D.C. Cir. 2015), for the proposition that the D.C. Circuit has "held that sick leave restrictions did not constitute a 'materially adverse' action where the restrictions had never actually affected the plaintiff." *Id.*

However, on the limited record at this stage of the litigation, the Court cannot say whether the denial here "never actually affected the plaintiff." *Id.* Unlike the proposed but un-served suspension, the denial of leave *was* allegedly carried out. And, despite Defendant's conclusory arguments otherwise, a number of courts in this Circuit have held that, under certain circumstances, "a denial of leave can constitute materially adverse action." *Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 103 (D.D.C. 2011) (emphasis omitted); *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 90 (D.D.C. 2009) (rejecting argument that denial of leave is inherently not an adverse action); *see also Wiley v. Glassman*, 511 F.3d 151, 159 (D.C. Cir. 2007) (affirming summary judgment for defendant on retaliation claim where employee alleged she was denied paid leave to attend depositions in her pending discrimination lawsuit, but relying on fact that guidelines applicable to her employment did not grant paid leave to attend such depositions). Without allowing Plaintiff to develop a factual record, the Court simply cannot say whether denying Plaintiff the requested leave resulted in the type and magnitude of harm sufficient to constitute an adverse action. Accordingly, Defendant's Motion is DENIED WITHOUT PREJUDICE in this respect.

### E.   Non-Selection for Permanent LMI AD Position

Finally, Defendant contends that Plaintiff cannot "allege sufficient facts to establish an adverse employment action has occurred" with regard to Defendant's failure to promote him to the Permanent LMI AD Position because Plaintiff "does not allege that he applied to the job announcement that led to Mr. Diallo's promotion to Associate Director." Def.'s Mot. at 8.

Defendant concedes that "Plaintiff alleges he applied to the May 2014 job announcement," for the position, but, argues that "DOES posted a second job announcement for the position in August 2014" and "[i]t was the August 2014 job announcement that led to the promotion of Mr. Diallo to Associate Director." *Id*. at 9. Defendant cites a number of cases for the proposition that one cannot state a claim for discrimination if they do not apply for the position they were allegedly denied. *Id*. at 8-9.

Defendant frames Plaintiff's claims too narrowly by focusing solely on the August 2014 job announcement. Plaintiff's claim with respect to the Permanent LMI AD Position is also predicated on Defendant's failure to consider his May 2014 application for that position. Plaintiff alleges that he applied to the Permanent LMI AD position in May of 2014. Compl. ¶ 41. Plaintiff alleges that Defendant refused to consider Plaintiff for the position, *id*. ¶ 63, even though Defendant "has always maintained [Plaintiff] was qualified," Pl.'s Opp'n at 15. Plaintiff complains that the position was "eventually fill[ed]" with a younger applicant. Compl. ¶ 63.

To establish a prima facie case under Title VII, "the plaintiff must show that (1) he is a member of a protected class; (2) he applied for and was qualified for an available position; (3) despite his qualifications he was rejected; and (4) either someone not of his protected class filled the position *or the position remained vacant and the employer continued to seek applicants*." *Cones v. Shalala*, 199 F.3d 512, 516 (D.C. Cir. 2000) (emphasis added). Here, although the opening Plaintiff submitted his application to was subsequently "canceled," Compl. ¶ 47, it can be inferred from the pleadings that the "position remained vacant" and that Defendant "continued to seek applicants" to fill it, *Cones*, 199 F.3d at 516. Indeed, shortly after the cancellation, Defendant posted and filled another announcement for the very same position. *See Carter v. George Washington Univ.*, 387 F.3d 872, 882-83 (D.C. Cir. 2004) (holding that

plaintiff can state prima facie claim for discrimination where Defendant "withdrew the position for lack of qualified applicants and then, several months later, restructured the position, increased the salary, and convinced the employee who had last held the position to return" because "the position not only remained unfilled, but, as shown by [defendant's] later efforts to bring back the former employee, the [defendant] still needed someone to occupy the position.").  On these allegations, the Court finds that Plaintiff's claim survives the pleading stage based on his May 2014 application.[4]

Moreover, although Defendant relies heavily on the fact that Plaintiff did not submit an application to the August 2014 announcement for the job which "led to the promotion of" Mr. Diallo, Def.'s Mot. at 9, the Court is reluctant to dismiss Plaintiff's claims on this ground at this point because Plaintiff alleges that Mr. Diallo *himself* did not apply to the August 2014 announcement.  Pl.'s Opp'n at 13; *see also id*. at 16-17 (arguing that, based on this fact, Plaintiff and Mr. Diallo were "treated differently by DOES hiring officials"); *Cf. Cones*, 199 F.3d at 518 (plaintiff "can certainly establish a prima facie case by demonstrating that he did precisely the same thing" to apply as did the individual who was selected for the position).  Accordingly, given the particular facts alleged in this case and at this early stage in the litigation, the Court will not dismiss Plaintiff's discrimination or retaliation claims with regard to non-selection for the Permanent LMI AD Position.

In sum, the Court finds that the only adverse actions Plaintiff has pled are Defendant's refusal to grant him leave to attend the deposition of a party to his prior lawsuit and Defendant's failure to select Plaintiff for the Permanent LMI AD Position.  Defendant's Motion is

---

[4] Having so found, the Court need not wade into the parties' dispute regarding whether Plaintiff was excused from applying to the August 2014 posting because doing so "would have been an exercise in futility."  Pl.'s Opp'n at 13.

GRANTED to the extent Plaintiff's claims rely on any other allegedly adverse actions.

### 2.  Failure to Exhaust Administrative Remedies

The Court must now address Defendant's alternative argument that Plaintiff failed to exhaust his administrative remedies with regard to Defendant's refusal to grant him leave to attend Mr. Moore's deposition.[5]  "Before suing under either the ADEA or Title VII, an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged discriminatory incident."  *Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998).  Any civil action that follows the charge "is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'"  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994)).  "At a minimum, the Title VII claims must arise from 'the administrative investigation that can reasonably be expected to follow the charge of discrimination.'"  *Id*. (quoting *Chisholm v. U.S. Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)).

In his Opposition, Plaintiff argues that his administrative charge merely "provides a summary of Plaintiff's claims and the causes of action upon which the claims rest," and that "[t]he details of the charges in the Complaint were presented during the OHR investigation."

---

[5] Defendant argues that Plaintiff failed to exhaust his administrative remedies with respect to three incidents alleged in Plaintiff's Complaint that do not appear in his administrative charge: "an email written on March 11, 2014, a Written Notice of *Proposed* 15-day suspension, and a failure to grant him leave."  Def.'s Mot. at 10-12. Because the Court has already determined that the March 11, 2014 email and the proposed suspension are not adverse actions, the Court addresses only whether Plaintiff exhausted his administrative remedies with regard to Defendant's failure to grant Plaintiff leave to attend Mr. Moore's deposition.

Pl.'s Opp'n at 18. He claims that Defendant's denial of his leave request was raised during the OHR's investigation, such that Defendant received sufficient notice of this claim. *Id.*

The Court will not dismiss Plaintiff's claim regarding denial of leave to attend Mr. Moore's deposition for failure to exhaust administrative remedies because the Courts finds that the denial was "reasonably related" to the allegations in Plaintiff's administrative charge. *Park*, 71 F.3d at 907. Plaintiff's administrative charge alleges that Defendant refused to select him for the Temporary and Permanent LMI AD positions in 2014 because of his age and in retaliation for protected activity, including an ongoing discrimination lawsuit against Defendant. It appears that the leave Plaintiff sought and was denied was for time to attend the deposition of a party to that same lawsuit. Compl. ¶ 78. The Court finds this factual connection sufficient to satisfy the "reasonably related" standard.

The Court notes that this connection is bolstered by the allegation that Plaintiff's claim regarding the denial of leave was *in fact* raised during the administrative investigation that followed Plaintiff's written charge. Courts have held that plaintiffs exhausted administrative remedies with regard to claims not specified in a charge where it was clear that the relevant administrative body would be aware of those claims during the course of investigating the charge. For example, in *Test v. Holder,* 614 F.Supp.2d 73 (D.D.C. 2009), the court held that the plaintiff had exhausted certain retaliation claims by presenting them to the EEOC during the course of its investigation into separate but related claims. *See id.* at 83; *see also Lane v. Tschetter*, No. CIV.A.05 1414 EGS, 2007 WL 2007493, at *5 (D.D.C. July 10, 2007) (holding that employee exhausted a claim because it "would be reasonably expected to surface during an investigation of her EEO charge."); *Perry v. Clinton*, 674 F. Supp. 2d 110, 118 (D.D.C. 2009)

(holding that that "[t]he EEO investigation that followed Perry's complaint demonstrates [the] connection" between the charged complaint and other allegations).

Finally, Defendant's reliance on *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) for the proposition that "all Title VII plaintiffs must file an EEO Charge for each discrete act of alleged retaliation or discrimination," is misplaced.  Def.'s Reply at 5.  In *Morgan*, the Supreme Court held that when a plaintiff alleges discrete acts of discrimination or retaliation, failure to comply with the applicable filing deadline will cause those claims to be time barred, "even when they are related to acts alleged in timely filed charges."  *Morgan,* 536 U.S. at 113. Here, Defendant does not challenge the timeliness of Plaintiff's efforts to exhaust his administrative remedies for any discrete acts of retaliation.  Instead, Defendant challenges the *scope* of the administrative charge.  Under these circumstances, the temporal concerns raised by *Morgan* do not come into play, and the Court finds that the *Park* "reasonably related" standard is still controlling on the issue before the Court.  *See Craig v. D.C.*, 74 F. Supp. 3d 349, 361-62 (D.D.C. 2014) (holding that post *Morgan*, the *Park* "reasonably related" standard still applies where defendant does not question the timeliness of plaintiff's charge, but only whether its scope encompasses allegations not mentioned in the charge).

For these reasons, the Court finds that the allegation of a denial of leave "fall[s] within the scope of 'the administrative investigation that can reasonably be expected to follow [Plaintiff's] charge of discrimination,'" *Marshall v. Fed. Exp. Corp.*, 130 F.3d 1095, 1098 (D.C. Cir. 1997) (quoting *Park,* 71 F.3d at 907), and therefore will not be dismissed for failure to exhaust administrative remedies.

### 3.   Causal Link Between Protected Activity and Adverse Actions

Finally, the Court also finds that Plaintiff has sufficiently pled a causal link between his protected activity and the remaining adverse actions.  To make out a prima facie case of

retaliation, a plaintiff must show that "'(1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) there was a causal link between the protected activity and the adverse action.'"  *Hamilton v. Geithner*, 666 F.3d 1344, 1357 (D.C. Cir. 2012) (quoting *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007)).  Here, Defendant argues that Plaintiff cannot establish the third element of his claim because "[f]ar too much time has passed since Plaintiff filed his EEO Charge in 2010 and the alleged retaliation for the Court to infer any connection."  Def.'s Mot. at 10.

In response, Plaintiff argues that the protected activity for which he was retaliated against is not only the original 2010 filing of his administrative charge, but also his ongoing litigation in District Court.  Pl.'s Opp'n. at 22.  Plaintiff claims that, because that suit was ongoing during the alleged retaliatory conduct, causation can be shown by temporal proximity.  *Id*.  He also argues that he has several pieces of direct evidence of causation in the form of statements made by various employees at DOES.  *Id*. at 19, 22-23.

The Court will not dismiss Plaintiff's claims at this stage for failure to plead causation. As an initial matter, Defendant again reads Plaintiff's claims too narrowly by suggesting that the only protected activity at issue is Plaintiff's 2010 administrative charge.  Plaintiff's claims are also predicated on a lawsuit and a series of "continued complaints" that appear to have been ongoing throughout the period of the alleged adverse actions.  *See, e.g.*, Pl.'s Opp'n. at 19 (alleging retaliation based on "ongoing" lawsuit); Compl. ¶ 72 (alleging that Plaintiff emailed Ms. Reich complaining about discrimination in March 2014); *id*. ¶ 78 (alleging that Plaintiff emailed Ms. Reich complaining about perceived retaliation in April 2014).

Moreover, even if Plaintiff had not pled a sufficient degree of temporal proximity between protected activity and retaliatory acts, Plaintiff is not *required* to rely on temporal

proximity to plead causation.  Although Defendant is correct that "[t]emporal proximity *can* indeed support an inference of causation," *Hamilton*, 666 F.3d at 1357 (emphasis added), such proximity is not the only method that Plaintiff may use to demonstrate the requisite causal link. Plaintiff can also rely on direct evidence of causation.  *See Vance v. Chao*, 496 F. Supp. 2d 182, 186 (D.D.C. 2007) ("a plaintiff is not obligated to rely on the presumption of causation.  A plaintiff may also put forward direct evidence and disregard the presumption and its time limitations."); *Beckham v. Nat'l R.R. Passenger Corp.*, 590 F. Supp. 2d 82, 89 (D.D.C. 2008) (holding that "a close temporal connection is not the only way to prove causation," and that "Plaintiff has satisfied her burden [on a motion to dismiss] by alleging that she was denied benefits '*because* of her opposition to actions made unlawful by Title VII . . . .'").

Here, Plaintiff alleges that Defendant did not promote him and denied him leave because of his prior complaints and lawsuit.  *See, e.g.*, Compl.¶ 77 ("Plaintiff's lawsuit and continued complaints about Rodgers' designation was a contributing factor to Plaintiff's denial of promotion"); Pl.'s Opp'n. at 21 ("Mr. Rodgers' denial of leave was deliberate and corrupted by animosity towards Dr. Kangethe more likely due to his protestations and the ongoing lawsuit."). Plaintiff even offers various statements from DOES officials that he contends are direct evidence of animosity and retaliation as a result of his protected activity.  Pl.'s Opp'n at 22-23 (listing Ms. Reich's March 11, 2014 email and an explanation DOES gave for not promoting Plaintiff during the OHR's investigation of Plaintiff's claims).  At this stage, these allegations of causation are sufficient.

\*       \*       \*

In sum, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss.  Defendant's Motion is GRANTED in that Plaintiff has not pled adverse actions with

respect to Ms. Reich's March 11, 2014 email, the notice of proposed suspension issued to Plaintiff, or the denial of the Temporary LMI AD Position.  Defendant's Motion is DENIED in all other respects.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, it is hereby ORDERED that Defendant's [5] Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

It is further ORDERED that Defendant's Motion is GRANTED in that Plaintiff has not pled adverse actions with respect to Ms. Reich's March 11, 2014 email, the notice of proposed suspension issued to Plaintiff, or the denial of the Temporary LMI AD Position.

It is further ORDERED that Defendant's Motion is DENIED in all other respects.

It is further ORDERED that Defendant shall file an answer in this matter by September 27, 2016.

It is further ORDERED that the clerk of the Court shall mail a copy of this Memorandum Opinion and Order to Plaintiff at his address of record.

Dated: September 13, 2016

                                        /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge